**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NARY SUN and FLORIBEL ENGLAND, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PREMIUM BRANDS OPCO LLC,<br><br>Defendant. | Civil Action No.: 1:26-cv-1614<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Nary Sun and Floribel England ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Premium Brands Opco LLC ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendant has nickel and dimed online purchasers on its websites in violation of California's Consumer Legal Remedies Act ("CLRA") and Virginia's Mandatory Fee and Surcharge Disclosure Law, Va. Code § 59.1-607 *et seq.*

2. Defendant operates several e-commerce websites, among them www.anntaylor.com ("Ann Taylor") and www.loft.com ("Loft") (together, the "Websites"). Whenever a consumer visits one of the Websites and selects an item for purchase, they are not shown the total cost upfront. Instead, consumers are quoted an artificially low price, only for

Defendant to sneak in a mandatory "Processing"[1] fee (the "Fee") at the end of the purchase process.

3. By analogy, if consumers were to walk into a brick-and-mortar clothing store, see a blouse they liked listed for sale for $49.00, and take it to the checkout counter, they would expect to pay $49.00 to the store, plus sales tax to the government. If, after consumers swiped their credit card, they noticed in fine print on the credit card pad that they would also be charged an extra "Processing Fee" for the service of having the tag's barcodes scanned and payment processed, they would reasonably be outraged. And yet this is exactly what Defendant does every day through its online marketplaces.

4. This practice is known as drip pricing. "Businesses engage in drip pricing by advertising products at artificially low headline prices and then disclosing additional charges later in the buying process." *Harvey v. World Mkt., LLC*, No. 25-cv-01242-CRB, 2025 WL 1359066, at *1 (N.D. Cal. May 9, 2025) (cleaned up). "Drip pricing" is a "common form of bait and switch." *Mansfield v. StockX LLC*, 802 F. Supp. 3d 1143, 1148 (N.D. Cal. 2025) (citation omitted). And various state consumer protection laws have long "banned bait and switch in consumer transactions." *Id.* (noting California's prohibition began in 1970).

5. That said, in recent years, given the proliferation of drip pricing on online ecommerce platforms, various states—including California, Virginia, and Massachusetts—began passing laws specifically prohibiting drip pricing. Effective July 1, 2024, California Civil Code § 1770(a)(29)(A) makes it unlawful to "[a]dvertis[e], display[], or offer[] a price for a good or service that does not include all mandatory fees or charges other than either" "[t]axes or fees

---

[1] Upon the investigation of Plaintiff's counsel, Defendant uses or has used both "Processing" and "Handling" to refer to the undisclosed, mandatory Fee. Thus, the Class also encompasses those individuals who paid a "Handling" Fee. All allegations concerning the "Processing" Fee apply equally to the "Handling" Fee, and vice versa.

imposed by a government on the transaction" or "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer."

6. Other states have followed suit. Effective July 1, 2025, Virginia Code § 59.1-608 makes it unlawful for suppliers in consumer transactions to "advertise or display a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges." And in Massachusetts, effective September 2, 2025, 940 CMR 38.04 makes it an unfair and deceptive practice under G.L. c. 93A, § 2 to "misrepresent[] or fail[] to disclose Clearly and Conspicuously, at the time of the initial presentation of the price of any Product, or any subsequent presentation thereafter, the Total Price of that Product."

7. For these reasons, Plaintiffs seek relief in this action individually and on behalf of all other purchasers of Defendant's online products in the states of California and Virginia for reasonable attorneys' costs and fees, injunctive relief under California Civil Code §§ 1770(a)(29)(A) and 1770(a)(9), and statutory damages under Virginia Code § 59.1-610.

## PARTIES

8. Plaintiff Nary Sun is an individual consumer who, at all times material hereto, was a citizen and resident of Sunnyvale, California.

9. In or around December 13, 2025, Plaintiff Sun purchased two items from Defendant's Ann Taylor website: the Weekend Collection Tie Waist Top in Electric in Periwinkle (advertised at $24.75) and Black (advertised at $24.75). When browsing and selecting which items to purchase, Plaintiff Sun relied on Defendant's advertised prices to decide whether to purchase that item or not.

10. Before Plaintiff Sun reached the checkout screen of the transaction, Defendant did not inform Plaintiff Sun that she would be charged an additional mandatory Fee. Plaintiff Sun

was forced to pay Defendant a bundled Shipping *& Processing* Fee of $8.95 to purchase her product. This fee was mandatory because Plaintiff Sun could not purchase the product from Defendant's website without paying the Fee.

11. At the time Plaintiff Sun purchased her products, she was not aware that Defendant's practices were unlawful under California Civil Code §§ 1770(a)(9) and 1770(a)(29)(A). Plaintiff Sun was not browsing in search of legal violations. Plaintiff Sun was instead browsing because she sincerely intended to purchase a product, and she did in fact purchase a product.

12. The transaction flow process that Plaintiff Sun viewed on Defendant's website was substantially similar to the depiction in this complaint.

13. Plaintiff Floribel England is an individual consumer who, at all times material hereto, was a citizen and resident of Woodbridge, Virginia.

14. In or around July 6, 2025, Plaintiff England purchased multiple items from Defendant's Loft website, including, for example, the Zig Zag Linen Blend Easy Tank Top (advertised at $24.94). When browsing and selecting which items to purchase, Plaintiff England relied on Defendant's advertised prices to decide whether to purchase that item or not.

15. Before Plaintiff England reached the checkout screen of the transaction, Defendant did not inform Plaintiff England that she would be charged an additional mandatory Fee. Plaintiff England was forced to pay Defendant a bundled Shipping *& Handling* Fee of $16.95 to purchase her product. This fee was mandatory because Plaintiff England could not purchase the product from Defendant's website without paying the Fee.

16. At the time Plaintiff England purchased her products, she was not aware that Defendant's practices were unlawful under Virginia Code § 59.1-608. Plaintiff England was not

browsing in search of legal violations. Plaintiff England was instead browsing because she sincerely intended to purchase a product, and she did in fact purchase a product.

17. The transaction flow process that Plaintiff England viewed on Defendant's website was substantially similar to the depiction in this complaint.

18. Defendant Premium Brands Opco LLC ("Defendant") is a U.S. company with its corporate headquarters at 7 Times Square, New York, New York, 10036.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one member of the putative Class is a citizen of a state different from Defendant.

20. This Court has general personal jurisdiction over Defendant because Defendant is headquartered in this state.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## FACTUAL ALLEGATIONS

***California's Honest Pricing Law***

22. Effective July 1, 2024, California enacted California Civil Code § 1770(a)(29)(A), which provides that "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either … [t]axes or fees imposed by a government on the transaction[]" and "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical goods to the consumer[]" is unlawful.

23. Handling charges, which include processing charges, are not postage or carrier charges. According to the California Attorney General's Office, "[a] business can exclude

shipping charges, but not handling charges. … Like any other mandatory fee or charge, a handling charge must be included in the advertised price."[2]

24. This prohibition is designed to protect consumers. As Senator Bill Dodd, a co-author of SB 478, stated in describing this new law: "Californians are fed up with dishonest fees being tacked on to seemingly everything … It's an underhanded trick to boost corporate profits at the expense of those who can least afford it. Our bill will end these unfair practices and put the consumer first, leveling the playing field for reputable businesses that advertise the real price up front."[3]

25. And according to Attorney General of California Rob Bonta, "[w]e can and should stop the fleecing of consumers. We can and should stop the imbalance in the marketplace."[4]

***Virginia's Mandatory Fee and Surcharge Disclosure Law***

26. In May 2, 2025, Virginia passed Senate Bills Nos. 1212 and 2515, which amended Virginia's Consumer Protection Act to add a new Chapter to the Act, entitled Mandatory Fees or Surcharges. Va. Code § 59.1-607 *et seq.* The amendment became effective on July 1, 2025.

27. The law provides that "No supplier shall, in connection with a consumer transaction, advertise or display a price for goods or services without clearly and conspicuously

---

[2] OFFICE OF THE ATTORNEY GENERAL, CAL. DEP'T OF JUSTICE, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

[3] OFFICE OF THE ATTORNEY GENERAL, CALIFORNIA DEP'T OF JUSTICE, *Attorney General Bonta Calls for California Legislature to Ban Hidden Fees (AKA Junk Fees)* (May 16, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-calls-california-legislature-ban-hidden-fees-aka-junk (last visited Dec. 24, 2024).

[4] *Id.*

displaying the total price, which shall include all mandatory fees or surcharges." Va. Code § 59.1-608.

28. The law defines "Mandatory fees or surcharges" to "include[] any additional fee or surcharge that must be paid in order to purchase the good or service being advertised." Va. Code § 59.1-607. Excluded from this definition are "(i) taxes or fees imposed on the consumer by a government or government-approved entity or assessment fees of a government-created special district or program paid to the government or government-approved entity or (ii) reasonable postage or shipping fees." *Id*. "Supplier" is defined as "a seller… that advertises, solicits, or engages in consumer transactions." Va. Code Ann. §§ 59.1-607 and 59.1-198. "Consumer transaction," in turn, "means: (1) the advertisement, sale … or offering for sale… of goods or services to be used primarily for personal, family, or household purposes." *Id*.

***Massachusetts' Unfair and Deceptive Fees***

29. In March 2025, the Massachusetts Attorney General finalized regulations issued under the Massachusetts Consumer Protection Act (MCPA) which, effective September 2, 2025, require businesses to meet stricter requirements for price transparency.

30. 940 CMR 38.04 provides that it "shall constitute an unfair and deceptive practice under G.L. c. 93A, §2" to "[m]isrepresent[] or fail[] to disclose Clearly and Conspicuously, at the time of the initial presentation of the price of any Product, or any subsequent presentation thereafter, the Total Price of that Product." 940 CMR 38.04(1).

31. This includes misrepresenting or failing to disclose "the nature, purpose, and amount of any fees, charges, or other expenses that would be imposed on the transaction due to the purchase of that Product (excluding Shipping Charges and Government Charges)[.]" 940 CMR 38.04(2)(a).

32. "Total Price" is defined as "[t]he maximum price a consumer must pay for a Product, inclusive of all fees, charges, or other expenses." 940 CMR 38.03.

***Ann Taylor's Website Purchase Flow***

33. When consumers enter Defendant's Ann Taylor website, they are first taken to Ann Taylor's homepage. *See* Figure 1.[5]




***Figure 1***

[5] All screenshots in this complaint are taken from a computer browser at 100% magnification.

34. From the homepage, users can begin navigating the website to browse for products. As a user continues navigating the Ann Taylor website to browse for items, Defendant advertises the price of each item it sells, as shown below in Figure 2.




***Figure 2***

35. Defendant further shows the advertised price of each item when a consumer clicks on any one item to view individually. *See* Figure 3.




***Figure 3***

36. Then, when a consumer places an item in their shopping cart, Defendant once again shows the item's price. *See* Figure 4.




***Figure 4***

37. Once the consumer continues to "Checkout Now," they are taken to the following screen. *See* Figure 5.




***Figure 5***

38. When the consumer continues to "Checkout," Defendant provides the consumer with the option to either enter their email and checkout as a guest, or enter their email and sign in. *See* Figure 6.



***Figure 6***

39. If a consumer does not have an Ann Taylor account, and would like to create one to sign in, they can do so, as seen on the following screens. *See* Figures 7-8.




*Figure 7*




*Figure 8*

40. Once a consumer enters their email and selects to checkout as a guest, to sign in, or to create an account, Defendant asks consumers to input their purchase information, such as their address.

41. Only then, once the address is inputted, does Defendant disclose the hidden fee—a "Processing" fee—which is bundled together with the legitimate shipping fee. *See* Figure 9, below, and Figure 10, next page.




***Figure 9***




***Figure 10***

42. In other words, the total price is ***never*** disclosed before a user reaches the final step in the checkout process prior to placing an order. Thus, Defendant is "[a]dvertising, displaying, or offering a price for a good … that does not include all mandatory fees or charges" in violation of California Civil Code § 1770(a)(29)(A). Defendant is also "advertis[ing] or display[ing] a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges." Virginia Code § 59.1-608.

43. The Fee is mandatory because there is ***no way*** to purchase a product on the website without paying the Fee.

44. The Fee is not a "[t]ax[] or other fee[] imposed by the government on the transaction." California Civil Code § 1770(a)(29)(A)(i).

45. The Fee is not a "postage or carriage charge[] that will be reasonably and actually incurred to ship the physical goods to the consumer." California Civil Code § 1770(a)(29)(A)(i). Although bundled with a legitimate Shipping fee, Processing Fee is not part of the postage or carriage charge. Discovery will reveal what percentage of the bundled "Shipping & Processing"

Fee is allocated for "Processing" a consumer's order. A processing fee, "[l]ike any other mandatory fee or charge … must be included in the advertised price."[6]

***Loft's Website Purchase Flow***

46. Defendant also owns and operates the Loft website.

47. The layout of this website is essentially the same as the Ann Taylor website. Consumers navigating the website and going through the purchase flow see the same prompts and types of displays from Defendant.

48. Thus, Defendant violates the CLRA on the Ann Taylor website and Loft website in substantially the same manner.

49. For example, when a consumer navigates to Loft's website, they are first shown a homepage from which they can search for various clothing items in the store. *See* Figure 11.




***Figure 11***

[6] Office of the Attorney General, Cal. Dep't of Justice, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

50. As a user continues navigating the Loft website to browse for items, Defendant advertises the price of each item it sells, as shown below. *See* Figure 12.




*Figure 12*

51. Defendant further shows the advertised price of each item when a consumer clicks on any one item to view individually. *See* Figure 13.




*Figure 13*

52. Then, when a consumer places an item in their shopping cart, Defendant once again shows the item's price. *See* Figure 14.




*Figure 14*

53. However, it isn't until the consumer continues to Checkout and adds their address in that Defendant discloses the hidden Fee—which is bundled together with the legitimate shipping fee. *See* Figure 15.




*Figure 15*

54. In other words, the total price is ***never*** disclosed before a user reaches the final step in the checkout process prior to placing an order. Thus, Defendant is "[a]dvertising, displaying, or offering a price for a good … that does not include all mandatory fees or charges" in violation of California Civil Code § 1770(a)(29)(A). Defendant is also "advertis[ing] or display[ing] a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges." Virginia Code § 59.1-608.

55. The Fee is mandatory because there is *no way* to purchase a product on the website without paying the Fee.

56. The Fee is not a "[t]ax[] or other fee[] imposed by the government on the transaction." California Civil Code § 1770(a)(29)(A)(i).

57. The Fee is not a "postage or carriage charge[] that will be reasonably and actually incurred to ship the physical goods to the consumer." California Civil Code § 1770(a)(29)(A)(i). Although bundled with a legitimate Shipping fee, the Processing fee is not part of the postage or carriage charge. Discovery will reveal what percentage of the bundled "Shipping & Processing" Fee is allocated for "Processing" a consumer's order. A processing fee, "[l]ike any other mandatory fee or charge … must be included in the advertised price."[7]

## CLASS ALLEGATIONS

58. **California Class:** Plaintiff Sun seeks to represent a class defined as all individuals in the state of California who purchased item(s) using Defendant's Ann Taylor and/or Loft website and paid the mandatory Fee during the three years preceding the filing of this Complaint. Excluded from the Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

[7] OFFICE OF THE ATTORNEY GENERAL, CAL. DEP'T OF JUSTICE, *SB 478 Frequently Asked Questions*, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

59. **California Subclass:** Plaintiff Sun also seeks to represent a subclass defined as all individuals in the state of California who purchased item(s) using Defendant's Ann Taylor and/or Loft website and paid the mandatory Fee on or after July 1, 2024. Excluded from the California Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

60. **Virginia Class:** Plaintiff England seeks to represent a class defined as all individuals in the state of Virginia who purchased item(s) using Defendant's Ann Taylor and/or Loft website and paid the mandatory Fee during the two years preceding the filing of this Complaint. Excluded from the Virginia Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

61. **Virginia Subclass:** Plaintiff England also seeks to represent a subclass defined as all individuals in the state of Virginia who purchased item(s) using Defendant's Ann Taylor and/or Loft website and paid the mandatory Fee on or after July 1, 2025. Excluded from the Virginia Subclass is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

62. Members of the Classes are so numerous that their individual joinder herein is impracticable. Members of the Classes likely number in the thousands. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

63. Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members. Common legal and factual questions include, but are not limited to, whether Defendant failed to include all mandatory fees or charges when advertising, displaying, or offering a price for the items for purchase, in

violation of California Civil Code § 1770(a)(29)(A); whether Defendant advertised goods or services with intent not to sell them as advertised, in violation of California Civil Code § 1770(a)(9); and whether Defendant failed to clearly and conspicuously display the total price, including all mandatory fees or surcharges, in violation of Virginia Code § 59.1-608. The claims of the named Plaintiffs are typical of the claims of the Classes in that the named Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant failing to include all mandatory fees or charges in the advertising, displaying, or offering a price for the items, throughout the online item purchase process.

64. Plaintiff Sun is an adequate representative of the California Class and California Subclass because her interests do not conflict with the interests of the California Class and California Subclass and members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of members of the California Class and California Subclass will be fairly and adequately protected by Plaintiff Sun and her counsel.

65. Plaintiff England is an adequate representative of the Virginia Class and Virginia Subclass because her interests do not conflict with the interests of the Virginia Class and Virginia Subclass and members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of members of the Virginia Class and Virginia Subclass will be fairly and adequately protected by Plaintiff England and her counsel.

66. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Classes. Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized

litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits off single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**California Civil Code § 1770(a)(29)(A)**
**(On Behalf of the California Subclass)**

67. Plaintiff Sun repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

68. Plaintiff Sun brings this claim individually and on behalf of the members of the California Subclass against Defendant.

69. Defendant owns, operates, or controls the Ann Taylor and Loft website, which is a place where consumers can purchase apparel.

70. Defendant violated California Civil Code § 1770(a)(29)(A) by "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" on the product screens depicted in this complaint.

71. Defendant's Fee is a "mandatory fee[] or charge[]" that must be paid in order to purchase the item. Cal. Civ. Code§ 1770(a)(29)(A). Plaintiff Sun purchased her products from Defendant on or around December 13, 2025 on Defendant's Ann Taylor website.

72. Plaintiff Sun and California Subclass members were harmed because they paid Defendant an unlawful fee. Because the total cost was not disclosed to Plaintiff Sun and

California Subclass members at the beginning of the purchase process, the resulting Fee that was applied was unlawful pursuant to California Civil Code § 1770(a)(29)(A).

73. Plaintiff Sun and Class Members were also harmed by not having the total cost of their products disclosed upfront at the start of the purchase process. By not knowing the total cost before selecting a product for purchase from Defendant, Plaintiff Sun and California Subclass Members could not shop around for clothing at other retailers, such as Gap and Abercrombie, to name a few. As such, Plaintiff Sun and California Subclass Members had no way of knowing whether they were getting the best deal their money could buy. By hiding its Fee, Defendant was able to reduce price competition and cause consumers like Plaintiff Sun and California Subclass members to overpay.

74. Plaintiff Sun and California Subclass members relied on Defendant's false and misleading representations that the cost of its products did not include the Fee in choosing to purchase its products.

75. On behalf of herself and members of the California Subclass, Plaintiff Sun seeks to enjoin the unlawful acts and practices described herein and recover reasonable attorneys' fees. *See* Cal. Civ. Code § 1780.

**COUNT II**
**California Civil Code § 1770(a)(9)**
**(On Behalf of the California Class)**

76. Plaintiff Sun repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

77. Plaintiff Sun brings this claim individually and on behalf of the members of the California Class against Defendant.

78. Plaintiff Sun purchased the products from Defendant on or around December 13, 2025 from Defendant's Ann Taylor Website.

79. Defendant violated California Civil Code § 1770(a)(9) by "[a]dvertising goods … with intent not to sell them as advertised." Specifically, Defendant advertised and expressly represented the price of their products with intent not to sell them at the advertised price.

80. As a result, Plaintiff Sun and California Class Members were harmed because they paid Defendant an unlawful Fee. This Fee was rendered unlawful by Defendant's failure to timely disclose it.

81. Plaintiff Sun and California Class Members were also harmed by not having the total cost of their products disclosed upfront at the start of the purchase process. By not knowing the total cost before selecting a product for purchase from Defendant, Plaintiff Sun and California Class Members could not shop around for clothing at other retailers, such as Gap and Abercrombie, to name a few. As such, Plaintiff Sun and California Class Members had no way of knowing whether they were getting the best deal their money could buy. By hiding its Fee, Defendant was able to reduce price competition and cause consumers like Plaintiff Sun and California Class members to overpay.

82. Plaintiff Sun and California Class members relied on Defendant's false and misleading representations of the advertised cost of its products in choosing to purchase its products.

83. As detailed in the body of this Complaint, Defendant has repeatedly engaged in conduct deemed a violation of the CLRA and has made representations regarding the price of the items on its Website which are false due to the uniform imposition of the Fee described herein. Indeed, Defendant concealed the true price of the items, and the true nature of the Fee it was charging on each purchase, from Plaintiff Sun and California Class members.

84. No reasonable consumer would expect the price advertised by Defendant to include an unlawful Fee in addition to lawful sales tax and shipping costs. *See Watson v. Crumbl*

*LLC*, 736 F. Supp. 3d 827, 845-46 (E.D. Cal. 2024) ("Plaintiffs have sufficiently alleged [Defendant] advertises one price for its products while also surreptitiously charging a higher price by adding the Service Fee. Thus, Plaintiffs have sufficiently alleged [Defendant] advertises their goods with the intent not to sell them as advertised.").

85. Defendant does not provide services that would lead reasonable consumers to expect the imposition of the Fee, and Defendant does not disclose the Fee anywhere before customers reach the point during checkout after which they have inputted their mailing address.

86. Defendant willfully employed a scheme designed to advertise a price that is not the true cost of its products, and did so willfully, wantonly, and with reckless disregard for the truth.

87. On behalf of herself and members of the California Class, Plaintiff Sun seeks to enjoin the unlawful acts and practices described herein and recover reasonable attorneys' fees. *See* Cal. Civ. Code § 1780.

**COUNT III**
**Virginia Code § 56.1-608**
**(On Behalf of the Virginia Subclass)**

88. Plaintiff England repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

89. Plaintiff England brings this claim individually and on behalf of the members of the Virginia Subclass against Defendant.

90. Defendant violated Virginia Code § 59.1-608 by "advertis[ing] or display[ing] a price for goods or services without clearly and conspicuously displaying the total price, which shall include all mandatory fees or surcharges." Specifically, on various screens prior to the checkout, Defendant advertised and displayed the price of their products without including its Processing/Handling Fee—which was mandatory on all transactions.

91. Plaintiff England and Virginia Subclass Members were harmed because they paid Defendant an unlawful fee. This fee was rendered unlawful by Defendant's failure to timely disclose it.

92. Plaintiff England and Virginia Subclass Members were also harmed by not having the total cost of their products disclosed upfront at the start of the purchase process. By not knowing the total cost before selecting a product for purchase from Defendant, Plaintiff England and Virginia Subclass Members could not shop around for items at other retailers like Gap and Abercrombie, to name a few. As such, Plaintiff England and Virginia Subclass Members had no way of knowing whether they were getting the best deal their money could buy. By hiding its Fee, Defendant was able to reduce price competition and cause consumers like Plaintiff England and Virginia Subclass Members to overpay.

93. Because Defendant violated Virginia's Mandatory Fees or Surcharges Disclosures Act, it committed "a prohibited practice under the provisions of § 59.1-200 and shall be subject to any and all of the enforcement provisions of the Virginia Consumer Protection Act." Va. Code §59.1-610.

94. On behalf of herself and members of the Virginia Subclass, Plaintiff England seeks to obtain statutory damages and reasonable attorneys' fees and costs. *See* Va. Code §59.1-204.

**COUNT IV**
**Virginia Code § 56.1-200**
**(On Behalf of the Virginia Class)**

95. Plaintiff England repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

96. Plaintiff England brings this claim individually and on behalf of the members of the Virginia Class against Defendant.

97. Defendant violated Virginia Code § 59.1-200(8), which prohibits companies like Defendant from "Advertising goods or services… with intent not to sell at the price or upon the terms advertised." Here, Defendant advertised its products for purchase on a website with prices that excluded its "Shipping *& Handling*" or "Shipping *& Processing*" fee.

98. Plaintiff England and Virginia Class Members were harmed because they paid Defendant an unlawful fee. This fee was rendered unlawful by Defendant's failure to timely disclose it.

99. Plaintiff England and Virginia Class Members were also harmed by not having the total cost of their products disclosed upfront at the start of the purchase process. By not knowing the total cost before selecting a product for purchase from Defendant, Plaintiff England and Virginia Class Members could not shop around for items at other retailers like Gap or Abercrombie, to name a few. As such, Plaintiff England and Virginia Class Members had no way of knowing whether they were getting the best deal their money could buy. By hiding its Processing/Handling Fee, Defendant was able to reduce price competition and cause consumers like Plaintiff England and Virginia Class members to overpay.

100. On behalf of herself and members of the Virginia Class, Plaintiff England seeks to obtain statutory damages and reasonable attorneys' fees and costs. *See* Va. Code §59.1-204.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and on behalf of the Classes, respectfully request this Court award relief against Defendant as follows:

a. an order certifying the Classes and designating Plaintiffs as Class Representatives and their counsel as Class Counsel;

b. award Plaintiffs and members of the Classes actual, consequential, punitive, and statutory damages, as appropriate;

c. award declaratory relief as permitted by law or equity, including directing Defendant to identify, with Court supervision, victims of their misconduct and pay them all money they are required to pay;

d. award attorneys' fees and costs; and

e. award any other further relief as the Court may deem necessary or appropriate.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: February 26, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Neal J. Deckant</u>*
Neal J. Deckant

Neal J. Deckant
Stefan Bogdanovich
Ines Diaz Villafana (*pro hac vice* forthcoming)
Celina Reynes (*pro hac vice* forthcoming)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com
sbogdanovich@bursor.com
idiaz@bursor.com
creynes@bursor.com

*Attorneys for Plaintiffs*